T.C. Memo. 2008-112

UNITED STATES TAX COURT

7050, LTD., JEROME SCHECHTER, TAX MATTERS PARTNER, ET AL.,[1]
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 20687-05, 20698-05, Filed April 23, 2008.
20700-05.

<u>William A. Roberts</u> and <u>Kyle Coleman</u>, for petitioners.

<u>Nancy B. Herbert</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  This partial summary-judgment motion raises
two very simple questions.  The first is whether two foreign

---

[1] The other cases that we consolidated with this one are The
Bottoms-Up Limited Partnership, Jerome Schechter, Tax Matters
Partner, docket number 20698-05 and First Sunny Day Family
Limited Partnership, Jerome Schechter, Tax Matters Partner,
docket number 20700-05.

currency options expired before they were contributed to a partnership named 7050, Ltd. The second is whether 7050 "terminated"--a term of art in the context of this case--by the end of 2001.

Though these questions are simple, they emerge from a deal of unusual complexity. And the Commissioner argues that both of the issues arise because the people putting the deal together didn't get the paperwork right: They ended up contributing worthless, already expired options to the partnership; and then didn't properly close down the partnership itself.

We have to decide if there's any genuine issue of fact about what really happened.

Background

These consolidated cases are three in a cluster of similar cases, all arising from investments in alleged Son-of-BOSS tax shelters and all assigned to this Division of the Court.[2] Each of the three cases involves a partnership, and Jerome Schechter is the tax matters partner of all three partnerships involved-- 7050, The Bottoms-Up Limited Partnership, and First Sunny Day Family Limited Partnership. 7050's owners were Schechter-- holding 99 percent as a limited partner--and a limited liability company named 84 LLC (Schechter was its registered agent) holding

_____

[2] For a general description of Son-of-BOSS transactions, see Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007).

1 percent and serving as general partner.  557 LLC is another limited liability company involved in the deal; it was formed in May 2001, at the same time as 84 and 7050.

7050 was at the center of a complicated series of tax-reduction transactions.  According to the Commissioner, even if Son-of-BOSS deals were generally upheld, this particular deal had a couple of unique problems.  The first is that options crucial to making the deal work were transferred to 7050 only after they had expired in September 2001.  This would have a significant impact on the basis calculation for other property that 7050 distributed later that year.  Then, when 7050 distributed its property to Schechter at the end of 2001, the Commissioner argues that it didn't quite distribute all of it, leaving behind a few thousand Canadian dollars in a bank account until 2003.  This, the Commissioner claims, means that Schechter didn't receive a "distribution in liquidation of his partnership interest" in 2001.  The Commissioner has moved for summary judgment on these facts.  If he's right, these cases are over and a substantial penalty might be tacked onto any 2001 taxes that 7050's partners owed.

On a summary-judgment motion, we view all the facts in the light most favorable to the nonmoving party.  Many of the key facts are not disputed, though, and on this motion we assume

without deciding that all the transactions involved were not shams and did not lack economic substance. The key facts are:[3]

- In July 2001, 557 bought a long foreign-currency option from Deutsche Bank and sold it an offsetting short option.

- On August 21, 2001, 557 bought Can$6,892.16 for US$4,500.

- On September 4, 2001, both foreign currency options expired out-of-the-money.

- In mid-September, Schechter sent a fax to a Deutsche Bank employee named Jennie Dunaway. He dated the cover letter to his fax September 14, 2001, but the fax has a footer suggesting it was sent September 15, 2001. Page 2 of the fax contains a statement signed by Schechter and dated August 1, 2001, purporting to transfer "both of its digital options" from 557 to 7050 "effective today."[4]

- On September 17, 2001, Schechter sent a second fax to Deutsche Bank with a revised statement purporting to transfer "all of its positions" from 557 to 7050 "effective today." This statement is also dated August 1, 2001.

- Also on September 17, 2001, Jennie Dunaway stated in an e-mail, "LOA's sent via fax. Moving positions only, no CASH."[5]

---

[3] The facts listed in this section are uncontested on this motion, though we note they have not been found to be true after a trial.

[4] The Commissioner notes, and Schechter doesn't dispute for purposes of this motion, that 557 was not a partner in 7050, that it was wholly owned by Schechter, and that it was a disregarded entity for Federal tax purposes.

[5] The Commissioner believes "LOA" stands for "letter of authorization," and Schechter doesn't dispute this for purposes of this motion.

- The Deutsche Bank account statements for both 557 and 7050 show that the transfer of these options didn't actually take place until September 17, 2001 (the transaction "settlement date"), by which time they had already expired worthless. Both statements, however, include the notation "A/O 8/01/01 AS CAPITAL CONTRIB."

- On December 24, 2001, Deutsche Bank posted a deposit into the 7050 account: "TRANSFER FROM 557 LLC" of Can$6,892.16.

- Schechter sent two faxes dated December 26, 2001, purporting to transfer one-half of 7050's Canadian currency to the First Sunny Day Family Limited Partnership and the other half to The Bottoms-Up Limited Partnership.[6] The faxes are both date-stamped January 2, 2002.

- 7050's 2001 year-end Deutsche Bank statement shows a balance of Can$6,892.16.

- On December 31, 2001, Deutsche Bank statements show that First Sunny Day and The Bottoms-Up partnerships engaged in currency transactions involving Canadian currency, both of which were less than one-half of the combined amount purportedly transferred from 7050 on December 26, 2001.

- Also on December 31, 2001, 7050 filed a Cancellation of Domestic Certificate of Limited Partnership with the Colorado secretary of state's office.

- 7050's 2001 tax return reflects a property distribution of $1,504,500, which includes the claimed basis in the long foreign currency option plus the basis in the Canadian currency contribution.

---

[6] These assignment documents are internally inconsistent--they list 7050 as the assignor but state that the First Sunny Day and The Bottoms-Up partnerships are transferring Canadian currency to 7050. There may be some dispute about the meaning of these documents because of this mistake, but we construe them in favor of 7050 on a summary-judgment motion.

- Quarterly statements for 7050's account show continued ownership of some Canadian currency until early 2003.

Surrounding these bare facts was a plan designed to make the most of the option contracts that ended up expiring worthless. The long option had a high purchase price (and thus a high basis) when 557 bought it. And under section 723,[7] that basis would travel with the option to 7050 when it was contributed. But section 1234(a)(2) says that if an option expires out of the money, it's deemed to have been sold on the date it expired. So if 557 didn't transfer the option to 7050 before it expired on September 4, 2001, there was no option to contribute later on. Worthless options being worthless, it would be deemed to have zero value and 7050 would have a zero basis in it. It's absurd for partners to go through the motions to transfer worthless property under such circumstances--so Schechter wants to show there's a genuine dispute as to whether 557 contributed the options before they expired.

Then there's the Canadian currency. Once 7050 completed the option transaction, it needed to distribute an asset to which the

---

[7] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court's Rules of Practice and Procedure.

large basis in the long option could be attached.[8]  That asset could then be sold at a giant loss by the person receiving it.[9] And 7050 aimed at making the Canadian dollars that asset.  This is where Schechter ran into trouble--orchestrating all of the necessary transactions within just a few months proved difficult.

## Discussion

Summary judgment is appropriate when there is no genuine issue of material fact and a decision may be rendered as a matter of law.  Rule 121(b).  The moving party bears the burden of proving that there is no genuine issue of material fact, and we make any and all factual inferences in the light most favorable to the nonmoving party.  Fla. Country Clubs, Inc. v. Commissioner, 122 T.C. 73, 75-6 (2004), affd. 404 F.3d 1291 (11th Cir. 2005).  But when the moving party adequately supports his motion for summary judgment with admissible evidence, the nonmoving party can't just deny it, but must recite specific facts showing that there really is a genuine factual issue for trial.  Rule 121(d).  We address each of the Commissioner's bases for summary judgment in turn.[10]

---

[8] For a primer on partnership basis rules and a description of a similar transaction, see Kligfeld, 128 T.C. at 196-97.

[9] Similarly, Kligfeld Holdings' transaction was designed to avoid tax by inflating basis to offset capital gains.  Kligfeld, 128 T.C. at 194-95, 198.

[10] The Commissioner also moves for summary judgment on a penalty issue--the gross misvaluation of assigning $1.5 million
(continued...)

I.   <u>The Option Assignment</u>

The parties agree that the options expired on September 4, 2001.  The Commissioner contends that 557 didn't assign its interest in the options to 7050 until after that date.  The evidence--consisting of the bank statements, Schechter's two faxes, and Dunaway's e-mail--indicates that Deutsche Bank didn't actually transfer the long option into 7050's account until September 17, 2001.

To contest the option's worthlessness when contributed, 7050 relies first on an affidavit from Joe Garza, the lawyer who put the deal together.  Garza states (and we must believe him in deciding this motion) that he consulted with a Deutsche Bank employee (a Mr. Brubaker) regarding the assignment of the options from 557 to 7050, and that they agreed to assign the options "on or about August 1, 2001."  We also assume that Garza is truthful in stating that he "confirmed with Mr. Brubaker that everything necessary for the assignment of the option positions from 557, LLC to 7050, Ltd. had taken place."  The record also contains the written assignments from 557 to 7050 (signed by Schechter on behalf of both entities) dated August 1, 2001, and by their terms "effective today."

---

[10](...continued)
or so in basis to a few thousand dollars' worth of Canadian currency.

The Commissioner points out that Schechter's option assignments contain fax stamps and cover letters dated in mid-September.  He notes that the option contract says that any assignment required prior written approval *from Deutsche Bank* to be valid.  Quoting from Section 11.1 of the Master Agreement, Garza's own legal opinion states:  "Transactions may be assigned to a new counterparty solely upon credit and legal approval of the new counterparty by [Deutsche Bank], such approval to occur in writing prior to any such assignment."[11]  And, consistent with this contract, the options were still in 557's brokerage account when they expired, and Deutsche Bank statements show no transfer actually happened until mid-September 2001--albeit with a notation that the transfer was supposed to be effective as of August 1, 2001.  But on a summary-judgment motion we have to draw inferences in favor of the nonmoving party--and so we must infer from Garza's affidavit that the parties had orally agreed to modify the requirement that the assignment be in writing and approved by Deutsche Bank before it became effective.  Since this assumed factual scenario is different from the one that the Commissioner proposes, we must deny him summary judgment on this point.  Whether or not 7050 sustains its burden of proof

---

[11] This Master Agreement is not part of the record on this motion, but neither party disputes the accuracy of the quote.

at trial, in defending against a summary-judgment motion that's enough.

II.  Liquidation of Schechter's Interest in 7050

The Commissioner next contends that the delay in distributing the last of 7050's assets means that any distribution of its assets in 2001 was not a distribution "in liquidation of a partner's interest"--a technical term under section 761 of considerable importance in tracing basis in this case.

Under section 732(a), the basis of an asset that a partnership distributes to a partner is that asset's adjusted basis to the partnership immediately before distribution.  The Commissioner says that the distribution to Schechter at the end of 2001 was just such a plain-vanilla section 732(a) distribution.  If he's right, Schechter would have only the piddling basis attributable to the portion of Canadian dollars actually distributed in 2001.  7050 had bought the Canadian currency for $4,500 and had distributed only about one-third by the end of 2001.  So its basis in Schechter's hands would be only about $1,500.

But section 732(b) creates an exception to this rule--if the partnership distributes an asset to liquidate the partner's interest in the partnership, the asset's basis is the partner's

basis in the partnership, reduced by any cash that the partnership distributes to him in the transaction.  Because Schechter claims that he contributed the long option to 7050 before it expired (and for purposes of this motion we must assume that's the way it happened), his basis in 7050 might include the $1,500,000 pre-expiration value of the long option.  If the distribution did liquidate his partnership interest, his entire $1,504,500 basis in the partnership in 2001 (less any money he received) might flow out to him.  So, the difference for Schechter between a section 732(a) distribution and a section 732(b) distribution might be about $1,500,000 of basis.

To win this battle, Schechter needs to point out some genuine dispute of fact on the key question of whether the distribution of the Canadian currency was "in liquidation of" his interest in 7050.  Section 761(d) states that the "term 'liquidation of a partner's interest' means the termination of a partner's *entire* interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership." (Emphasis added.)

Schechter relies entirely on the termination of 7050 itself as the event that terminated his "entire interest."[12]  If he can

---

[12] There are also ways other than termination of a partnership that might allow a partner to completely sever ties so as to get a "distribution in liquidation of his partnership interest"--sale, exchange, withdrawal, or abandonment being the

(continued...)

show (or, more precisely, raise a genuine issue about whether) 7050 terminated at the end of 2001, then he could argue that any distribution then occurring resulted in a liquidation of his interest and qualified for section 732(b) basis treatment.

This takes us to section 708. Section 708(b)(1)(A) tells us that a partnership terminates only if "no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership." The regulations state that the date on which a partnership terminates is the "date on which the winding up of the partnership affairs is completed." Sec. 1.708-1(b)(3)(i), Income Tax Regs.

Schechter argues that 7050 met this definition by the end of 2001. He notes that Garza filed a certificate of cancellation with the Colorado secretary of state's office by the end of the year (7050 was organized under Colorado law), and that 7050 labeled its 2001 tax return a "final return." He argues that these facts show that he intended to terminate 7050 in 2001. The Commissioner does not dispute Schechter's intention, but instead argues that, whatever Schechter intended, 7050 actually limped on into 2003. He asserts that as a matter of law there could be no liquidating distribution until the last of 7050's Canadian

---

[12](...continued)
most prominent. O'Brien v. Commissioner, 77 T.C. 113, 116 (1981) (abandonment); Tapper v. Commissioner, T.C. Memo. 1986-597 (sale); see sec. 1.732-1(b), Example, Income Tax Regs., (retirement).

dollars were distributed from the Deutsche Bank account--which he contends didn't happen until 2003.  Schechter counterargues that after December 31, 2001, "no further activity occurred."  We assume that--apart from the undisputed fact that 7050 continued holding the Canadian currency in its bank account--this is true.

The question for us to answer is whether an inactive currency account was a continuation of 7050's business activity-- or a part of its winding up--under the Code.  We look to federal, not state, law:

> While the dissolution of a partnership is governed by State law, the termination of a partnership for Federal tax purposes is controlled by Federal law.  A termination of a partnership for Federal tax purposes may be different from its termination, dissolution, or winding-up under State law, and a partnership may continue to exist for Federal tax purposes even though State law provides that the partnership has terminated, dissolved, or wound-up. * * *

Harbor Cove Marina Partners Partnership v. Commissioner, 123 T.C. 64, 80 (2004).

We have previously interpreted section 708(b)(1)(A) to require complete cessation of all partnership activity, including the distribution to the partners of all the partnership's assets. Id. at 81.  In Harbor Cove, we emphasized that "simply because a managing partner acts unilaterally to dissolve a partnership, to zero out the partnership assets and liabilities, and to report to the Commissioner that the partnership has terminated does not

mean that the partnership has terminated for Federal tax purposes." Id. at 85. In Foxman v. Commissioner, 41 T.C. 535, 556-557 (1964), affd. 352 F.2d 466 (3d Cir. 1965), we held that a partnership continued to exist where all that remained after an asset sale was two promissory notes collecting interest. See also Ginsberg v. United States, 184 Ct. Cl. 444, 396 F.2d 983, 988 (1968) (abandonment of partnership's primary purpose not termination); Hoagland v. Commissioner, T.C. Memo. 1971-310 (no termination where partnership held onto underdeveloped land); Sargent v. Commissioner, T.C. Memo. 1970-214 (no termination where partnership's checking account continued to be used).

Holding Canadian currency in a bank account is quite similar to the kinds of minimal activity that we've already found were enough to keep a partnership unterminated. And so--because there is no genuine issue of fact that 7050 continued to hold that account in its name until 2003--we hold that Schechter's partnership interest was not liquidated through 7050's termination in 2001. Instead, Schechter received a distribution of Canadian currency in 2003 when he closed 7050's account for good. His interest in the partnership was therefore not liquidated for purposes of section 761(d) until the later date, and he is unable to take advantage of the section 732(b) basis rule. We will grant the Commissioner's motion for summary judgment on this issue.

That leaves for decision only that part of the Commissioner's motion dealing with penalty issues. He urges us to grant summary judgment on two factual disputes--that the amount claimed as partner contributions to 7050, and the amount claimed by 7050 as partnership distributions in 2001, were both overstated by more than 400 percent. (Section 6662(e) and (h) makes that exaggerated valuation the trigger for a 40-percent penalty on any resulting underpayment of tax.)

The difficulty is that the section 6662 penalty is generally subject to a reasonable-cause-and-good-faith defense. But there is a regulation cited by neither party, section 301.6221-1(c) and (d), Proced. & Admin. Regs., which appears to make the issue of reasonable cause an exclusively partner-level defense. The validity of this regulation is being challenged in at least two other cases currently pending before the Court,[13] so we will deny this part of his motion without prejudice to its renewal. If the Commissioner chooses to renew his summary-judgment motion on the

---

[13] New Millennium Trading, LLC v. Commissioner, docket number 3439-06, motion for partial summary judgment, filed Feb. 6, 2008, and Tigers Eye Trading, LLC v. Commissioner, docket number 014510-05, motion by Logan Trust for partial summary judgment to determine the invalidity of Temp. Reg. Sec. 301.6221-1T(c) and (d), filed Feb. 25, 2008. (The temporary regulation challenged in those motions is not different from the permanent regulation that applies in this case.)

penalty issue, he should address the effect and validity of the regulation; as, of course, should 7050 in its answer.

Since this is a split decision,

<u>An order granting in part and denying in part respondent's motion for partial summary judgment will be issued</u>.